UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALICIA MARIE CROWELL,

                    Plaintiff,

   -v-                                        5:17-CV-819

ULTA BEAUTY STORE #1014,
Company, and DEBORAH BRADY,
District Manager,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                      OF COUNSEL:

ALICIA MARIE CROWELL
Plaintiff, pro se
2726 Coventry Drive
Sarasota, FL 34231

LITTLER, MENDELSON LAW FIRM          JACQUELINE P. POLITO, ESQ.
Attorneys for Defendants                       CAREY ANN DENEFRIO, ESQ.
375 Woodcliff Drive, 2nd Floor
Fairport, NY 14450

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     On July 25, 2017, plaintiff Alicia Marie Crowell ("Crowell" or "plaintiff"), proceeding pro se, filed this action against defendants Ulta Beauty Store #1014 ("Ulta"), a cosmetics store where she used to work, and Deborah Brady ("Brady"), her former supervisor (collectively "defendants"). According to plaintiff's complaint, defendants violated Title VII of the Civil

Rights Act of 1964 ("Title VII") by wrongfully terminating her based on her sexual orientation. In addition, plaintiff alleges defendants violated the Americans with Disabilities Act ("ADA") by discriminating against her after she disclosed that her teenage daughter suffered from depression. Plaintiff requests an award of $2.5 million in damages.

On September 26, 2017, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking to dismiss Crowell's complaint in its entirety for failure to state any viable federal claims. Although plaintiff's opposition to defendants' motion was due on or before October 10, 2017, plaintiff has failed to respond. Defendants have submitted a reply. Because the return deadline has now passed, the motion will be considered fully briefed on the basis of the current submissions and will be decided without oral argument.

## II. BACKGROUND

The following facts are taken from Crowell's complaint and assumed true for purposes of resolving defendants' motion to dismiss. Plaintiff was the General Manager of Ulta Beauty Store #1014 at Destiny USA, a shopping mall in Syracuse, New York.

In January of 2016, Crowell met with Brady, an Ulta District Manager and plaintiff's direct supervisor, to discuss plaintiff's request to change her schedule to pick up some "closing," or evening, shifts. According to plaintiff, this became necessary because she "could not depend solely on [her] girlfriend to take [her] daughter to doctor's appointments."

Crowell alleges that Brady became defensive and "visibly uncomfortable" when plaintiff mentioned that she had a "girlfriend." Nevertheless, Brady then asked plaintiff what concerns she had and how she could help. Plaintiff told Brady that her "teenage daughter had fallen into a deep state of depression, [and had] stopped attending school[ ] and all activities." According to plaintiff, she asked Brady "how to apply for FMLA . . . as the meeting

became so negative." Plaintiff alleges that Brady stated the store was "too busy" for plaintiff to apply for FMLA.

Thereafter, Brady began coming in to Crowell's store to ask staff members questions about plaintiff. Plaintiff alleges that her "entire staff" agreed that Brady's visits "were very negative." According to plaintiff, Brady repeatedly questioned the staff about plaintiff's fitness "as a leader" and about plaintiff's personal life.

Eventually, Brady informed Crowell that she was putting plaintiff on a Personal Improvement Plan ("PIP"). Brady explained that, as part of plaintiff's PIP, Brady would "be attending physically or via telephone all weekly manager meetings as to add support for [plaintiff] and the team." According to plaintiff, Brady told her that she was "too nice" with her entire team. Plaintiff alleges that Brady did not follow through on her end of the PIP: Brady only attended one meeting (via telephone) and "did not set clear goals," only repeatedly stating that plaintiff "needed to improve the matrix."

On several occasions, Crowell informed Brady that she did not agree with certain statements Brady had written on the PIP progress notes. However, Brady refused to give plaintiff the opportunity to write a formal statement in response. Instead, Brady told plaintiff "it was required by the company" and that she was required to sign the PIP "as a condition" of employment. Plaintiff signed the PIP "under great distress."

On April 15, 2016, Brady came into Crowell's store to tell her she was being fired. Plaintiff refused to sign the final PIP sheet. Plaintiff alleges that she worked for Ulta for "almost 7 years without one written or verbal disciplinary action" and never used her earned sick, vacation, or personal days. Plaintiff further alleges that, upon her termination, Brady

"held a [conference] call with all store managers where she announced confidential information about [plaintiff's] termination."

Crowell filed a formal written complaint with Ulta's Human Resources Department ("HR Department") which replied that "they take these matters seriously and if they had any concerns, they would contact [plaintiff]." However, Ulta's HR Department never called plaintiff back.

Crowell then filed a case with the Equal Employment Opportunity Commission ("EEOC"), which issued to plaintiff a Dismissal and Notice of Rights on May 2, 2017. This action followed.

## III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required." Id. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the

non-movant's favor." Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.). In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

The basic pleading requirements set forth above apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In other words, "[w]here, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se. Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, J.) (internal quotation marks and footnote omitted). Even a pro se plaintiff must plead sufficient factual allegations to suggest an entitlement to relief. See id. Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

As an initial matter, Crowell cannot pursue her Title VII or ADA claims against Brady, her former supervisor, because individual defendants are not subject to liability under either

- 5 -

of these statutes. See Gomez v. N.Y. City Police Dep't, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) ("There is no individual liability under Title VII . . . . [or] the ADA."); see also Reynolds v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII."). Accordingly, to the extent plaintiff has attempted to assert Title VII or ADA claims directly against Brady, those claims must be dismissed.

### A. Title VII

At the pleadings stage, Title VII "requires a plaintiff asserting a discrimination claim to allege two elements: (1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015).

"As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against [her]." Vega, 801 F.3d at 85. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).

"An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "Examples of materially adverse changes including termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega, 801 F.3d at 85.

"As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the

employer's decision to take the action." Vega, 801 F.3d at 85 (citation omitted). In other words, "a plaintiff in a Title VII case need not allege 'but-for' causation." Id.

"At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 87 (citing Littlejohn v. City of N.Y., 795 F.3d 297, 310 (2d Cir. 2015)).

Even accounting for her pro se status, Crowell's Title VII discrimination claims fail to state a plausible claim. First, courts have long interpreted Title VII as providing no protection against "discrimination on the basis of sexual orientation." Philpott v. New York, 252 F. Supp. 3d 313, 315 (S.D.N.Y. 2017) (discussing Second Circuit's continued rejection of such a theory in Simonton v. Runyon, 232 F.3d 33 (2d Cir. 2000) and Dawson v. Bumble & Bumble, 398 F.3d 211 (2d Cir. 2005)).[1] In other words, plaintiff's sexual orientation is not a "protected class" for purposes of Title VII. Accordingly, her complaint must fail under current governing law.

However, as the Court in Philpott observed, the current position staked about by the Second Circuit is under assault: just this year, the Seventh Circuit, sitting en banc, concluded that "discrimination on the basis of sexual orientation is a form of sex discrimination" cognizable under Title VII. Hively v. Ivy Tech Cmty. Coll. of Indiana, 853 F.3d

---

[1] Recently, a panel of the Second Circuit concluded that Simonton and Dawson are still good law. Christiansen v. Omnicom Grp., Inc., 852 F.3d 195 (2d Cir. 2017). The panel also clarified that while a sexual orientation discrimination claim is not currently cognizable under Title VII, a "claim based on the gender stereotyping theory of sex discrimination" remains cognizable. Crowell's allegations, even liberally construed in her favor, do not bring her within the ambit of this theory. See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

339 (7th Cir. 2017) (en banc). Indeed, Chief Judge Katzmann's separate concurrence in Christiansen "persuasively outlines why sexual orientation discrimination is a form of sex discrimination and should therefore be cognizable under Title VII." Philpott, 252 F. Supp. 3d at 316 (citing Christiansen, 852 F.3d at 201-06). Therefore, in light of the evolving state of the law, the sufficiency of Crowell's allegations will be considered under the assumption that her sexual orientation entitles her to "protected class" status for purposes of Title VII.

Yet even given the benefit of this assumption, Crowell's complaint still fails to state a plausible Title VII claim. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)).

After carefully considering her pleading, Crowell has failed to allege sufficient facts to demonstrate that her termination was motivated, at least in part, by discriminatory animus directed toward her sexual orientation. In support of her claim, plaintiff alleges that Brady became defensive and "visibly uncomfortable" when plaintiff mentioned that she had a "girlfriend." But plaintiff also alleges that Brady then asked plaintiff what concerns she had and how she could help. Following this single meeting, Brady scrutinizing plaintiff's management and leadership activities at the store over nearly a four-month period. Ultimately, this process culminated in plaintiff's termination, ostensibly for failure to adhere to the requirements of the PIP.

Even mindful of Crowell's pro se status, this is not enough to state a Title VII claim. Outside of her initial, brief encounter with Brady, plaintiff does not identify any other comments that Brady made (to her or anyone else) or actions that Brady took (outside of the PIP) in possible relation to plaintiff's sexual orientation. Nor does plaintiff describe at all the unfavorable statements Brady wrote in the PIP, or provide facts that might suggest these statements were falsehoods intended to give the pretense of a performance-based termination. Although plaintiff asserts the implementation of the PIP was unfair or possibly improper, she has provided nothing to plausibly connect it to Brady's animus toward her status as a member of a protected class. Permitting that kind of claim to go forward under Title VII, without anything more, would essentially transmogrify a supervisor's unfair performance evaluation into a federal civil rights matter.

Beyond Crowell's allegation that her staff members found visits from Brady, a higher-up in Ulta's organizational chain of command, to be unpleasant, negative, or intrusive, plaintiff does not offer a basis on which to connect her eventual termination to her protected class status. Moultrie v. Carver Found., 669 F. App'x 25, 26 (2d Cir. 2016) (summary order) ("Due to the absence of any specific allegations in [plaintiff's] complaint giving rise to an inference of [discrimination], the complaint must be dismissed for failure to state a claim upon which relief can be granted."). Accordingly, plaintiff's Title VII claim will be dismissed.

### B. ADA

Crowell's ADA claim fails for a similar reason. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42

U.S.C. § 12112(a). Here, however, there is no indication that plaintiff herself suffers from any disability.[2] Rather, plaintiff's complaint makes reference only to an alleged disability that her daughter was, or is, suffering. Because plaintiff has not pleaded that she herself is a "qualified individual" who suffered discrimination on the "basis of disability," this claim must also be dismissed.

Mindful of Crowell's pro se status, it has also been considered whether she is attempting to raise a "rarely litigated" claim of ADA "associational discrimination," which requires a plaintiff to "make out a prima facie case by establishing:  1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Graziadio v. Culinary Institute of Am., 817 F.3d 415, 432 (2d Cir. 2016).

However, much like her Title VII claim, Crowell's complaint makes only a single reference to her daughter's alleged disability as part of a discussion with Brady, her supervisor, about the possibility of changing her work schedule. Plaintiff's termination nearly four months later, on the facts alleged, does not give rise to even a plausible inference that her daughter's condition was a "determining factor" in the employer's adverse decision. Accordingly, any ADA claim based on this theory will also be dismissed.

---

[2] Nor does Crowell suggest that her employer "regarded" her as disabled. See, e.g., Hernandez v. Int'l Shoppes, LLC, 100 F. Supp. 3d 232, 250 (E.D.N.Y. 2015).

### C. The Family & Medical Leave Act

Finally, Crowell's complaint makes several references to "FMLA" leave, a reference to the Family & Medical Leave Act ("FMLA"). Out of solicitude for plaintiff, the Court has sua sponte considered whether she has stated a plausible claim for relief under this federal statute.

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." Graziadio, 817 F.3d at 424; see also Potenza v. City of N.Y., 365 F.3d 165, 168 (2d Cir. 2004) (per curiam) (describing FMLA claims as "question[ing] . . . whether the employer in some manner impeded the employee's exercise of his or her right").

In other words, "to prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." Graziadio, 817 F.3d at 424.

Even resolving the first, second, and third prongs of this test in Crowell's favor, she has failed to plausibly allege facts that might satisfy the fourth or fifth prongs. In sum, plaintiff alleges that she asked Brady "how to apply for FMLA" during a meeting in which she also asked to change her work schedule to the "closing" shift. According to plaintiff, Brady responded by stating only that the store was "too busy" for plaintiff to apply for FMLA at that time before moving on to other topics.

Notably, there is no further mention that Crowell made any attempt to pursue FMLA leave, either with Brady or through Ulta's HR Department. In fact, there is no indication that

the subject ever came up again. Elsewhere in her complaint, plaintiff readily points out that she complained to Ulta's HR Department about Brady's conduct in terminating her as a result of the PIP. Yet there is no mention that plaintiff made any other attempt to inquire, ask, or take advantage of any FMLA leave that might have been available to her. To be sure, Brady allegedly gave a single, dismissive response to plaintiff's single, passing request for information about FMLA leave. But even for a pro se plaintiff on a motion to dismiss, the plausibility pleading standard of Rule 12(b)(6) demands more. Accordingly, plaintiff has failed to state a claim for FMLA interference.

## V. CONCLUSION

"A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). However, if the problems with a complaint are "substantive" rather than the result of an "inadequately or inartfully pleaded" complaint, an opportunity to replead would be "futile" and "should be denied." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Often, a pro se plaintiff's opposition memorandum will shed light on, or at the very least hint at, certain additional facts or circumstances that, if properly alleged in an amended pleading, would suffice to state plausible claims. See, e.g., Graham v. Macy's, Inc., 2016 WL 354897 at *10 (S.D.N.Y. Jan. 28, 2016) (observing that pro se litigant had been permitted opportunity to amend, at least in part, because her motion papers contained new allegations that "begin to—although they do not fully—remedy the deficiencies in her Complaint").

Crowell has not submitted any opposition paperwork in this case, and the allegations in her complaint reflect a more detailed version of, and are consistent with, the underlying

allegations plaintiff initially made in her administrative complaint to the EEOC. In light of those facts, the problems with plaintiff's complaint appear to be substantive—the version of events recounted in plaintiff's operative complaint does not suffice to state plausible claims under Title VII, the ADA, or the FMLA. Given that both iterations of plaintiff's allegations track the same timeline and concern the same facts, and given that plaintiff has not submitted any paperwork to this Court that might suggest otherwise, it is unlikely that permitting amendment would be productive in this case.

Therefore, it is

ORDERED that

1. Defendants Ulta Beauty Store #1014 and Deborah Brady's motion to dismiss is GRANTED; and

2. Plaintiff Alicia Marie Crowell's complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motion and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 1, 2017
       Utica, New York.